FILED
CLERK

6/13/2013 3:37 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MICHAEL DEFALCO AND WILLIAM
MATTHEWS,

                Plaintiffs,                **MEMORANDUM OF
                                                      DECISION AND ORDER**
       -against-                      11-CV-05502 (ADS)(ETB)

PAUL M. DECHANCE, in his capacity as
Chairman of the Board of Zoning Appeals for
the Town of Brookhaven, the BOARD OF
ZONING APPEALS, and the TOWN OF
BROOKHAVEN

                Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**William D. Wexler, Esq.**
*Attorney for the Plaintiff*
816 Deer Park Avenue
North Babylon, NY 11703

**Robert F. Quinlan, Brookhaven Town Attorney**
*Attorney for the Defendants*
1 Independence Hill
Farmingville, NY 11738
    By:  Daniel Belano
        Todd M. Lewis, Sr
        Assistant Town Attorneys

**SPATT, District Judge**.

      This action arises out of the denial by the Defendant Board of Zoning Appeals for the

Town of Brookhaven of the Plaintiff Michael DeFalco's application for a variance on his

property in Brookhaven. On November 30, 2011, DeFalco and William Mathews ("the

Plaintiffs") filed an amended complaint against the Defendants Paul M. Dechance Chairman of

the Board of Zoning Appeals for the Town of Brookhaven, the Board of Zoning Appeals, and the

Town of Brookhaven (collectively the "Defendants"), alleging violations of their substantive and

1

procedural due process rights and equal protection rights under the United States Constitution. Presently pending before the Court are a motion by the Defendants for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c) and a motion by the Plaintiffs pursuant to Fed. R. Civ. P. 56 for partial summary judgment on the due process causes of action. For the reasons that follow, the Defendants' motion for judgment on the pleadings is granted; the Plaintiffs' motion for partial summary judgment is denied as moot; and the complaint is dismissed in its entirety.

## I.   BACKGROUND

For purposes of the motion for judgment on the pleadings, the following facts are drawn from the amended complaint and construed in a light most favorable to the Plaintiffs.

The Plaintiffs are the owners of certain improved real property on Fire Island located on the south side of Ocean Walk, 165 feet east of Nautilus Walk, Fire Island Pines in the Town of Brookhaven. The Defendant Paul M. DeChance ("DeChance") is the Chairman of the Board of Zoning Appeals for the Town of Brookhaven ("the Board"). Pursuant to the Town Law of the State of New York, the Board is charged with hearing and deciding appeals from and reviewing any order, requirement, decision, interpretation, or determination made by the administrative official charged with the enforcement of any ordinance or local law.

The property at issue, measuring 6,600 feet, is improved with a two-story wood frame. In 1996, the Plaintiffs obtained title to the property for use as a summer home. The existing dwelling measures 1,224 square feet and accounts for 19% of the lot occupancy. Existing amenities account for an additional 23.6% lot occupancy for a total of 42.6% lot coverage. All existing structures are recognized in valid certificates of occupancy.

In 2010, DeFalco applied to the Board seeking certain variances, including: front yard setback and minimum and total yard side variance; a proposed second-story balcony and second-story residence addition; minimum and total side yard variances for a proposed south side second-story balcony and proposed deck addition; and an eight-foot high fence on both side yards. Lastly, DeFalco sought permission to exceed the 35% lot occupancy. In particular, DeFalco proposed to remove decking on the east and west side of the dwelling and replace it with the proposed decking on the south side of the dwelling and was therefore proposing to maintain the same 42.6% lot occupancy.

At a public hearing, DeFalco's agent testified in support of his application. DeFalco's request was opposed by a neighboring property owner, Craig Schlossberg. The Board also received letters from the Fire Island Pines Property Owners Association; the Department of the Interior; and the Brookhaven Division of Environmental Protection, which were read into the record.

On May 12, 2011, the Board granted the application in part with respect to the proposed second story residence addition and second story balcony. However, as to the lot coverage request, the Board found as follows:

    A. Applicant submitted no evidence of prior grants in the area maintaining 42.6% lot coverage. As the applicant is seeking to significantly alter the existing dwelling, the lot occupancy that currently exists on the subject lot is no longer protected by the Town of Brookhaven certificates described above. As such, the Board finds that the request is outside the nature and character of the community and would have a negative and precedent setting effect if granted.

    B. Applicant requests permission to maintain 42.6% lot coverage where 35% is permitted. The Board finds this excessive coverage to be a substantial request when compared to the Code and what presently exists on the ground.

    C. The applicant can feasibly conform to the Code's requirements without losing any of the dwelling space, as the existing structure accounts for only 19% of the lot occupancy. Allowing for some relief in lot occupancy, at 37%, would

3

      provide the applicant approximately one thousand square feet of accessory structures on the subject parcel. The Board finds that the applicant, in constructing the decks to the side yard setbacks described above, could feasibly provide adequate accessory area while maintaining lot occupancy at 37%. This would be in close conformity to the Code requirement of 35% than the 42.6% requested herein.

  D.  The Board finds that the precedent setting nature of 42.6% lot coverage would set a negative precedent and would create a cumulative effect which would have a negative impact on the sensitive physical and environmental conditions of the neighborhood.

  E.  Though the Board recognizes that the applicant is seeking to maintain the same lot coverage as presently exists in the parcel, the Board finds that the applicant's hardship is self-created in nature as the applicant is proposing structural alterations to the dwelling as defined by the Code but choosing not to return the parcel to the Code required lot coverage of 35%.

      As such, the Board finds that the applicant's request to maintain 42.6% lot coverage, where 35% is permitted, is not the minimum relief necessary and would have a negative effect on the health, safety and welfare of the community. The Board further finds that this detriment will be mitigated by the granting of 37% lot coverage as an alternative to the applicant's request.

(Def's Reply Exh 6).

**A.** <u>**State Court Action**</u>

      Prior to the filing of this federal action, DeFalco commenced a proceeding, <u>DeFalco v DeChance</u>, Index No. 11-17102, in the New York State Supreme Court, Suffolk County, pursuant to Article 78 of the New York State Civil Practice Law and Rules (CPLR) against the Defendants and related parties. As relevant here, DeFalco challenged the Board's decision to the extent it required him to reduce his lot coverage from 42.6% to 37%. In this regard, DeFalco contended that the Board's determination revoked his existing certificates of occupancy and compliance with respect to the existing dwelling and structures on his property, thereby effecting an unconstitutional taking of his property and violating his due process right to a hearing.

By decision dated September 4, 2012, Supreme Court, Suffolk County (Lasalle, J.), rejected this argument, reasoning that "[the Board]'s determination did not affect [DeFalco']s right to continue to live on his property with the dwelling and structures thereon as is." (Def's Reply, Exh 2).  Rather, the court observed, "[the Board] merely determined that if [DeFalco] decided to make his proposed alterations on the property, he would have to bring his lot occupancy and side yard setbacks into closer conformity with the current zoning requirements" (Id.).  The court further opined that "[t]o the extent that [DeFalco] argues that his current certificates of occupancy and compliance in certain structures on the property establish his vested right in those structures, it has been held that a landowner's 'vested right [] in a nonconforming structure existing at the time a prohibitory code provision is enacted, does not extend to subsequent construction." (Id., citing Matter of Rembar v Board of Appeals of Vil. Of E. Hampton, 148 AD2d 619, 620 (2d Dept 1989)).

In the interim, Schlossberg brought an Article 78 proceeding against the Defendants, DeFalco, and Matthews, to annul the May 12, 2011 Board decision on the basis that the Board failed to comply with the State Environmental Quality Review Act ("SEQRA").  In particular, Schlossberg contended that the Board failed to conduct an environmental review in connection with DeFalco's application for a variance.

By decision dated August 6, 2012, Supreme Court (1) granted Schlossberg's petition; (2)  annulled the May 12, 2011 Board's decision; and (3) remanded the matter to the Board for a new determination.  By order dated March 20, 2013, on remand and upon a SEQRA determination that "lot coverage reduction to 37% would not alter the character of the community or impact physical or environmental condition," the Board adopted its findings outlined in the May 12, 2011 decision.

5

By separate order dated December 20, 2012, in the DeFalco state proceeding, the Supreme Court vacated its prior decision dated September 4, 2012 and denied DeFalco's petition as moot.

## B. The Present Action

As stated above, on November 30, 2011, the Plaintiffs filed an amended complaint against the Defendants pursuant to 42 U.S.C. § 1983, alleging violations of their substantive and procedural due process rights as well as their equal protection rights. The Plaintiffs also sought a judgment pursuant to 28 U.S.C. § 2201 declaring the certificates of occupancy valid and legal and "that the variances should not be subject to plaintiffs' reducing the lot coverage of their property." (Amended Complaint, ¶ 32(a)). Finally, the Plaintiffs sought a permanent injunction against the Defendants pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202 preventing them from taking any action "against plaintiffs under any provision of the Town Code to punish plaintiffs for, or prohibit plaintiffs from using and improving the premises." (Id. ¶ 33). After submitting an answer to the Amended Complaint, the Defendants moved pursuant to Fed. R. Civ. P. 12 (c) for judgment on the pleadings dismissing the complaint. In the Defendants' motion papers, they specify that the Court should dismiss this case pursuant to Fed. R. Civ. P. (12)(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Thereafter, the Plaintiffs moved pursuant to Fed. R. Civ. P. 56 for partial summary judgment on their causes of action sounding in procedural and substantive due process rights.

## II.  DISCUSSION

### A.  Legal Standard for Motion to Dismiss Pursuant to Rule 12(b)(1)

Under Federal Rule of Civil Procedure Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.").  In reviewing a motion to dismiss under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint, but it is not required to draw all reasonable inferences in the plaintiff's favor.  See J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  Rather, a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  See Makarova, 201 F.3d at 113.  In deciding a 12(b)(1) motion, the district court may rely on and refer to evidence outside the pleadings.  See Id.

### B.  Legal Standard for Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)

In general, "the standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles.  See Harris v. Mills, 572 F. 3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 663-64). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiff's favor. See Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed.R.Civ.P. 12(b)(6). Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

C. **As to Whether the Plaintiffs Have Standing to Pursue the Present Action**

The Defendants first argue that the Board "did not revoke, modify, reduce, declare invalid, or otherwise adversity affect [their] Certificates of Occupancy nor did it reduce Plaintiffs' lot occupancy" (Def's Mem, at 8). For this reason, the Defendants assert, the

Plaintiffs lack standing to bring this action and the Court lacks subject matter jurisdiction over the action.

"In every federal case, the party bringing the suit must establish standing to prosecute the action." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004). Arising from the case and controversy requirement of Article III of the Constitution, "[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); see also Clapper v. Amnesty Int'l, __ U.S. __, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013). To establish standing for purposes of the constitutional "case or controversy" requirement, a plaintiff must show that he or she personally has suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Clapper, 133 S. Ct. at 1147 (internal quotation marks omitted).

Here, construing the motion papers favorably to the Plaintiffs, the Court finds that they adequately alleged that but for the Board's decision, they would have been able to develop the premises with the desired lot coverage so that they suffered a concrete injury. See Soundview Associates v. Town of Riverhead, 893 F. Supp. 2d 416, 429-30 (E.D.N.Y. 2012) (Alleged injury suffered by landowner, namely, its inability to construct and operate health spa on its property, was sufficient to confer standing upon landowner with respect to its § 1983 action against town, town attorney, and town's planning board attorney for their alleged violation of its Fourteenth Amendment rights to substantive and procedural due process in denying its special permit application for the health spa and in subsequently causing its continuing application to be withdrawn). Indeed, the Defendants fail to cite a case where a court declined to confer standing

upon a plaintiff despite an adverse determination against him or her by a state administrative entity. The fact that the Board's decision was conditional in nature and did not affect the Plaintiffs' existing use of the premises speaks to, as explained later, whether the Plaintiffs were deprived of a protected property interest rather than whether they suffered a concrete injury for purposes of Article III standing.

D. **As to Whether the Plaintiffs State a Cause of Action for Violation of Procedural and Substantive Due Process**

As an initial matter, the Court observes that, despite the September 4, 2012 decision in Supreme Court, Suffolk County rejecting the Plaintiffs' due process claims, the Plaintiffs are not precluded from asserting those claims here. As noted above, Supreme Court, Suffolk County vacated its September 4, 2012 decision. It is well-settled in this circuit that a vacated order has no collateral estoppel effect. See Corporation of Lloyd's v. Lloyd's U.S., 831 F.2d 33, 36 (2d Cir. 1987); Universal City Studios, Inc. v. Nintendo Co., 578 F. Supp. 911, 919–20 (S.D.N.Y.1983), affd, 746 F.2d 112 (2d Cir. 1984).

Turning to the substantive law, causes of action based on alleged violations of "due process" are "based on the Fourteenth Amendment, as implemented by section 1983, and require[ ] the existence of a federally protectible property right and the denial of such a right in the absence of either procedural or substantive due process." Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999); see also Rackley v. City of New York, 186 F.Supp.2d 466, 479 (S.D.N.Y.2002). Because the United States Constitution generally does not create property interests, this Court, in applying the entitlement test, looks to "existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection under the substantive [or procedural] due process doctrine." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 130 (2d Cir. 1998)

10

(internal quotation marks omitted) (citing Brady v. Town of Colchester, 863 F.2d 205, 212 (2d Cir. 1988) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).  Accordingly, in this case, the Court must turn to New York law to determine whether the Plaintiffs have a protectible property right.

In assessing this issue, the Court is mindful of the general proscription that "federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the [C]ircuit's many local legislative and administrative agencies."  Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir. 1986).  Indeed, "the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decisions; in our federal system, that is the province of the state courts."  Zahra v. Town of Southhold, 48 F.3d 674, 680 (2d Cir. 1995).

"In order for an interest in a particular land-use benefit to qualify as a property interest for the purposes of the . . . due process clause [,] a landowner must show a 'clear entitlement' to that benefit."  O'Mara v. Town of Wappinger, 485 F.3d 693, 700 (2d Cir. 2007) (citing Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006)).  A mere "abstract need or desire" for the benefit is insufficient.  RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911, 915 (2d Cir. 1989) (quoting Roth, 408 U.S. at 577).  This "clear entitlement" test must be applied with "considerable rigor."  Id. at 918.  The test "focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision."  Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (quoting Zahra, 48 F.3d at 680) (internal quotation marks omitted); see Natale, 170 F.3d at 263 ("entitlement turns on whether the issuing authority . . . is required to issue [permit] upon ascertainment that certain objectively ascertainable criteria have been met"); Walz v. Town of

11

Smithtown, 46 F.3d 162, 168 (2d Cir. 1995) (homeowner had property interest in an excavation permit because superintendent of highways had no discretion to decline to issue it if the application stated the nature, location, extent and purpose of the proposed excavations); Gagliardi v. Village of Pawling, 18 F.3d 188, 192-193 (2d Cir. 1994) (landowners had no property interest in enforcement of zoning laws for adjacent property, since the municipal officials had broad discretion in determining whether to grant or deny building permit, site plan and variances); RRI Realty Corp., 870 F.2d at 918-19 (no property interest existed in a building permit since town officials had wide discretion to either grant or deny the permit). Even if "objective observers would estimate that the probability of [obtaining the relief sought] was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." RRI Realty, 870 F.2d at 918.

  Here, the Court must first identify the potential property right of which the Plaintiffs were allegedly deprived. The potential property right at issue is not, as the Plaintiffs suggest, the Certificates of Occupancy recognizing the non-conforming lot coverage. Indeed, the Board makes clear that the Plaintiffs' enjoyment of the existing non-conforming use survives the Board's denial of the variance. Cf. Norton v. Town of Islip, 239 F.Supp.2d 264, 270-271 (E.D.N.Y. 2003) (holding that the Town's issuance of a certificate of occupancy which revoked the former conditional use as a two-family dwelling "was an affirmative act revoking the prior property right in its nonconforming use, subject to a procedural due process challenge, despite defendants' claim that the right to conforming use expired years previously when the house remained unoccupied for one year, after being gutted by fire"). Rather, the potential property right at issue of which the Plaintiffs were allegedly deprived is the Plaintiffs' proposed extension of their non-conforming lot coverage – that is, the requested variance as to lot coverage.

12

However, a landowner's "vested right[] in a nonconforming structure existing at the time a prohibitory code provision is enacted, does not extend to subsequent construction." Matter of Renbar, 148 AD2d at 620; see also Garcia v. Holze, 94 A.D.2d 759, 760 (2d Dept 1983); Matter of Rosbar Co. v Board of Appeals of City of Long Beach, 77 A.D.2d 568 (2d Dept 1980), affd, 53 N.Y.2d 623, 625, 420 N.E.2d 969 (1981).  Brookhaven Town Code § 85-166 (A) clearly states that "no building or land shall be used and no building shall be erected or structurally altered except in conformity with the provisions of this article."  In addition, a zoning board of appeals "c[an] properly decide that additional variances would impose too great a burden and strain on the existing community" or "find that previous awards had been a mistake that should not be again repeated," as a board is "not bound to perpetuate earlier error." Cowan v Kern, 41 N.Y.2d 591, 596, 394 N.Y.S.2d 579 [1977]).  Furthermore, "[a] zoning board may, where appropriate, impose reasonable conditions and restrictions as are directly related to and incidental to the proposed use of the property, and aimed at minimizing the adverse impact to an area that might result from the grant of a variance or special permit." Matter of Gentile v Village of Tuckahoe Zoning Bd. of Appeals, 87 A.D.3d 695, 696 (2d Dept 2011) (internal quotation marks omitted).

To be sure, "a property interest can sometimes exist in *what is sought* – in addition to the property interest that exists in what is owned – provided there is a 'legitimate claim of entitlement to the benefit in question.'" Zahra, 48 F.3d at 679–80 (emphasis added).  Again, whether the Plaintiffs' possess a protected property right interest in the variance turns on whether, under applicable state law, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." Walz v. Town of Smithtown, 46 F.3d 162, 168 (2d Cir. 1995) (quoting Yale Auto Parts v. Johnson, 758

13

F.2d 54, 59 (2d Cir. 1985)). More specifically, "entitlement turns on whether the issuing authority lacks discretion to deny the permit, i.e., is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." Natale, 170 F.3d at 263.

However, here, the Plaintiffs fail to establish a "legitimate claim to entitlement to the benefit in question." Even without section 85-166 (A) of the Brookhaven Town Code, it is well-settled that local zoning boards enjoy broad discretion in the consideration of applications for variances. See Matter of Ifrah v. Utshig, 98 N.Y.2d 304, 746 N.Y.S. 2d 667 (2002); Matter of Fuhst v. Foley, 45 N.Y.2d 441, 410 N.Y.S.2d 56 (1978); Matter of Miller v. Town of Brookhaven Zoning Bd. of Appeals, 74 A.D.3d 1343 (2d Dept 2010). In making its determination as to whether to grant an area variance, a zoning board of appeals is required, pursuant to Town Law § 267-b(3), to engage in a balancing test, weighing the benefit to the applicant against the detriment to the health, safety, and welfare of the neighborhood or community if the variance is granted. See Matter of Pecoraro v. Board of Appeals of Town of Hempstead, 2 N.Y.3d 608, 781 N.Y.S. 2d 234 (2004).

The board must consider whether (1) an undesirable change will be produced in the character of the neighborhood or a detriment to nearby properties will be created by granting the area variance; (2) the benefit sought by the applicant can be achieved by some other method, feasible for the applicant to pursue, other than an area variance; (3) the requested variance is substantial; (4) the proposed variance will have an adverse impact on the physical or environmental conditions in the neighborhood; and (5) whether the alleged difficulty was self-created. See Matter of Pecoraro, 2 N.Y.3d at 613; Matter of Ifrah v Utschig, 98 N.Y.2d at 307-308. A zoning board is "not required to justify its determination with supporting evidence with respect to each of the five factors, so long as its ultimate determination balancing the relevant

14

considerations was rational." Matter of Steiert Enters. v. City of Glen Cove, 90 AD3d 764, 767 (2d Dept 2011), quoting Matter of Merlotto v. Town of Patterson Zoning Bd. of Appeals, 43 A.D.3d 926, 299 (2d Dept 2007).

In this case, "[t]he discretion granted the Town under the ordinance. . . prevents [the P]laintiffs from having an expectation of being granted a zoning variance sufficient to rise to the level of a protected property interest." See Vertical Broad., Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 393 (E.D.N.Y. 2000); Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (there was no protected property interest in a variance where zoning regulations granted the zoning board with discretionary approval powers); Dean Tarry Corp. v. Friedlander, 826 F.2d 210, 213 (2d Cir. 1987) (property owner's expectation of success in receiving planning board approval for his project did not give rise to a cognizable property right because of the broad discretion that the zoning ordinance conferred on the planning board).

Having determined that the Plaintiffs fail to adequately allege a constitutionally protected property interest, the Court need not address whether the Defendants acted in an irrational manner with respect to that property interest. Vertical Broad., Inc., 84 F. Supp. 2d at 392 ("Specifically, in cases where there is no 'entitlement,' and therefore no protected property interest, it will matter not how the regulator's actions are characterized."). Accordingly, the Court grants the Defendants' motion to dismiss the Plaintiffs' substantive due process and procedural due process causes of action.

### E. As to Whether the Plaintiffs Have Stated an Equal Protection Claim

In the amended complaint, the Plaintiffs assert that their equal protection rights under the Fourteenth Amendment were violated under a "class-of-one" theory.

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed.2d 313 (1985); see also Vill. Of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (citations omitted)).  In Prestopnik v. Whelan, the Second Circuit explained the difference between class-of-one equal protection claims and more traditional equal protection claims:

> The Equal Protection Clause requires that the government treat all similarly situated people alike.  While this clause is most commonly used to bring claims alleging discrimination based on membership in a protected class, it may also be used to bring a "class of one" equal protection claim. In a "class of one" case, the plaintiff uses the existence of persons in similar circumstances who received more favorable treatment than the plaintiff to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose– whether personal or otherwise – is all but certain.

249 F. Appx 210, 212–13 (2d Cir. 2007) (internal alterations, citations, and quotation marks omitted).  A class-of-one claim exists "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Olech, 528 U.S. at 564.

Furthermore, "[c]ourts, including the Second Circuit, have repeatedly cautioned about the danger of ordinary disputes between a citizen and a municipality – whether it be about land use, licenses, inspections, or some other regulatory or investigative function of local governments – being transformed into federal lawsuits by an incorrect, overexpansive theory of class-of-one liability." Crippen v. Town of Hempstead, 07-CV-3478 JFB ARL, 2013 WL 1283402

16

(E.D.N.Y. Mar. 29, 2013); Bizzarro v. Miranda, 394 F.3d 82, 88–89 (2d Cir. 2005) ("Olech does not empower federal courts to review government actions for correctness. Rather, an Olech-type equal protection claim focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency."); Geinosky v. City of Chi., 675 F.3d 743, 747 (7th Cir. 2012) ("Courts have understood that if class-of-one claims are not defined appropriately, they might turn many ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits."); Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216–17 (10th Cir. 2011) ( "We have approached class-of-one claims with caution, wary of turning even quotidian exercises of government discretion into constitutional causes. . . . These concerns are magnified with challenges to low-level government decision-making, which often involves a great deal of discretion. The latitude afforded police officers, . . . zoning officials, and other similar government actors necessarily results in a sizeable amount of random variation in outcome. If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed." (internal citations and quotation marks omitted); Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n., 610 F.3d 8, 16 (1st Cir. 2010) ("Drawing distinctions is what legislators and regulators do every day: without this comparability sieve, every routine governmental decision at the state and local level—of which there are millions every year– could become a class-of-one case in federal court."); Cordi–Allen v. Conlon, 494 F.3d 245, 252 (1st Cir. 2007) ("The burden that a class of one plaintiff must carry at the summary judgment stage is considerably heavier than a mere showing that others have applied, with more auspicious results, for the same benefit that he seeks. . . . Were the law otherwise, the federal court would be transmogrified into a super-charged version of a local zoning board – a zoning board on steroids, as it were."); McDonald v. Vill. of Winnetka, 371

17

F.3d 992, 1009 (7th Cir. 2004) ("Even if [plaintiff] was wronged here, we do not believe that he has shown the wrong to be discriminatory in nature. Every time an actor commits a tort, he may be treating the victim differently than he frequently treats others, simply because tortious conduct is by nature a departure from some norm. Nonetheless, the purpose of entertaining a 'class on one' equal protection claim is not to criminalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case.") (citations omitted); Crippen, 2013 WL 1283402, at *8 ("plaintiffs cannot attempt to federalize every such dispute with a municipality by simply uttering the magic words 'class-of-one,' without also pointing to any evidence that all other similarly situated individuals received more favorable treatment than the plaintiff").

In this case, the Court deems the Plaintiffs' allegations that they are part of a "class of one" to be conclusory. Pursuant to Iqbal, the motion to dismiss analysis begins with the "identif[ication of] the allegations in the complaint that are not entitled to the assumption of truth." 129 S. Ct. at 1951. Many of the Plaintiffs' allegations in support of their cause of action are nothing more than "bare assertions" amounting to a "formulaic recitation of the elements of a . . . [class-of-one equal protection] claim." See id. These include allegations that the "[t]he Defendants have not secured for every person within its jurisdiction freedom from intentional and arbitrary discrimination occasioned by the express use of the [Board]'s power; "[t]here is no rational basis for the difference in treatment"; and the Defendants acted "for the sole purpose to prevent plaintiffs from improving their residence and to deny them the use of their property." (Amended Complaint, at ¶ 64-66); see Moss v. United States Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (bald allegation of impermissible government motive is conclusory and may be disregarded under Iqbal). Indeed, it bears noting that the Plaintiffs fail to make any argument in

18

support of their equal protection claim in their memorandum of law in opposition to the Defendants' motion to dismiss. Accordingly, the Court grants the Defendants' motion to dismiss the equal protection cause of action.

## F. As to the Plaintiffs' Motion for Partial Summary Judgment

"Because the claims against defendants do not survive the motion[] to dismiss, the Court denies as moot plaintiff[s] motion for [partial] summary judgment." <u>Watanmaker v. Clark</u>, 09-CV-3877 JFB ARL, 2010 WL 3516344 (E.D.N.Y. Aug. 31, 2010).

### III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED**, that the Defendants' Motion Pursuant to Fed. R. Civ. P. 12 (c) for judgment on the pleadings is granted and the complaint is dismissed in its entirety with prejudice; and it is further

**ORDERED**, that the Plaintiffs' motion for partial summary judgment is denied as moot; and the Clerk is directed to close the case.

**SO ORDERED.**
Dated: Central Islip, New York
June 13, 2013

                  *Arthur D. Spatt*
                  ARTHUR D. SPATT
                  United States District Judge